IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| SHAWNAH M. NELSON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 5:13-cv-271 (MTT) (CHW) |
| | : | |
| CAROLYN W. COLVIN, | : | Social Security Appeal |
| Acting Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## REPORT AND RECOMMENDATION

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff Shawnah M. Nelson's application for benefits. In accordance with the analysis below, it is **RECOMMENDED** that Plaintiff's case be **REVERSED** and **REMANDED** to the Commissioner for further proceedings pursuant to "sentence four" of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff, who was born in April 1964, filed an application for Title II benefits in March 2009 alleging an initial onset date of June 23, 2008. (Pl.'s Br., Doc. 14, pp. 3-4). Plaintiff claims to be disabled due to "a variety of medical problems including arthritis, anxiety, depression, asthma, and obesity." (*Id.*). These problems caused Plaintiff to miss nearly seven or eight months of work, and eventually to leave her job with GEICO in June 2008. (R. 39-42).

Plaintiff's application was denied initially and on reconsideration, (R. 104-05), and a reviewing Administrative Law Judge ("ALJ"), Judge Carol G. Moore, issued an unfavorable decision in Plaintiff's case on May 20, 2011. (R. 109-117). Judge Moore found that Plaintiff suffered from a number of "severe" impairments, including "Osteoarthritis of the knees,"

"Morbid Obesity," "Degenerative joint disease," and "Fibromyalgia." (R. 112). Judge Moore also found, though, that no treating-source functional evaluations or opinions were in the record, and that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her impairments were "not fully credible." (R. 115-116). As a result, Judge Moore found Plaintiff "not disabled." (*Id.*).

Plaintiff sought review with the Appeals Council, which, in August 2011, remanded on two grounds. (R. 124-25). First, the Appeals Council noted that Judge Moore failed to consider or evaluate a Third-Party Function Report completed by Ms. Patricia Nelson, Plaintiff's mother. (*Id.*). Second, the Appeals Council found that Judge Moore did not comply with S.S.R. 96-7p in discounting Plaintiff's subjective pain testimony. (*Id.*). Specifically, the Appeals Council instructed Judge Moore to provide "specific reasons for the finding on credibility, supported by the evidence in the case record, and . . . to make clear the weight that is given to the claimant's statements and the reason for that weight." (*Id.*).

On remand in June 2012, Judge Moore found that Plaintiff suffered from several new "severe" impairments, including "rheumatoid arthritis" and "gastric ulcers." (R. 16). Judge Moore also expressly assigned "little weight" to Ms. Patricia Nelsons' Third-Party Function Report, and again discounted Plaintiff's subjective pain testimony. (R. 22). In finding Plaintiff "not fully credible," Judge Moore noted that "the objective medical findings do not show findings of such severity as to preclude the claimant from all work." (*Id.*). Judge Moore also noted that Plaintiff had not been compliant with diet and exercise recommendations, and that Plaintiff's daily activities appeared inconsistent with the alleged severity of her impairments. (*Id.*). The Appeals Council denied Plaintiff's request to review Judge Moore's second opinion on June 4, 2013, (R. 1-4), and Plaintiff now seeks review before this Court pursuant to "sentence

four" of 42 U.S.C. § 405(g). *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253 (11th Cir. 2007).

## STANDARD OF REVIEW

District courts have a limited role in reviewing claims brought under the Social Security Act. Review of the Commissioner's decision is restricted to a determination of whether the decision is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Consequently, a court's role in reviewing claims brought under the Social Security Act is quite narrow.

District courts must defer to the Commissioner's factual findings. Courts may not decide facts, re-weigh evidence, nor substitute their judgment for that of the Commissioner. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). *See also Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986). Courts must scrutinize the entire administrative record to determine the reasonableness of the Commissioner's factual findings. *Bloodsworth*, 703 F.2d at 1239. However, even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if it is supported by substantial evidence. *Id.*

The Commissioner's findings of law are given less deference. Courts must determine if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610

F.2d 355, 359 (5th Cir. 1980). Courts must therefore consider any questions of law *de novo*, and "no . . . presumption of validity attaches to the [Commissioner's] conclusions of law, including determinations of the proper standards to be applied in reviewing claims." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982). The Commissioner's failure to apply the correct legal standards or to provide a sufficient factual basis for the court to determine that the correct legal standards have been followed is grounds for reversal. *Id.*

## EVALUATION OF DISABILITY

Persons are "disabled" for the purposes of receiving benefits under the Social Security Act if they are unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment which is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

When evaluating a claimant's disability, the Commissioner follows a five-step "sequential evaluation procedure." 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner determines whether the claimant currently engages in substantial gainful activity. At step two, the Commissioner considers the medical severity of the claimant's impairments. Next, at step three, the Commissioner determines whether the severity of the claimant's impairments (i) meet or equal the severity of one or more of the impairments specified in the listing of impairments; and (ii) meet the duration requirement. If so, the sequential evaluation procedure stops and the claimant is declared "disabled." If not, the Commissioner assesses the claimant's residual functional capacity, ("RFC"), which is defined as "the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). The Commissioner then proceeds to step four where, based on her RFC assessment, she evaluates the claimant's ability to return to past

relevant work despite his or her medically-determinable impairments. Finally, at step five, the Commissioner determines whether there are a sufficient number of jobs in the national economy that the claimant can perform in light of his or her RFC, age, education, and work experience.

## DISABILITY EVALUATION IN PLAINTIFF'S CASE

Following the five-step sequential evaluation procedure, the reviewing ALJ made the following determinations in Plaintiff's case. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since at least June 23, 2008, her alleged onset date. (R. 16). At step two, the ALJ found that Plaintiff had the following severe impairments: "osteoarthritis of the knees," "rheumatoid arthritis," "fibromyalgia," "gastric ulcers," "morbid obesity," "asthma," "degenerative joint disease" and "depression." (*Id.*). The ALJ also noted that Plaintiff suffered from "gastroesophageal reflux (GERD), hypothyroidism, and obstructive sleep apnea (OSA)," but the ALJ found that these impairments were not severe. (*Id.*).

At step three, the ALJ found that Plaintiff's impairments did not meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*). Therefore, the ALJ assessed Plaintiff's RFC and found that Plaintiff could perform "light work," and specifically that Plaintiff could:

> [S]it six hours in an eight-hour workday with appropriate breaks, and stand/walk for six hours in an eight-hour workday with appropriate breaks. She must have a sit and stand option. She can lift and carry twenty pounds occasionally and frequently lift and carry ten pounds. She should never climb ladders, ropes or scaffolds. She can occasionally climb stairs/ ramps, stoop, kneel, crouch, and crawl. She can frequently handle and finger. She can have no more than frequent exposure to extreme cold; pulmonary irritants such as fumes, odors, and dust; and hazards, such as moving machinery and heights. She can understand and remember and follow simple instructions and sustain attention and pace for simple tasks. She is capable of occasional public contact.

(R. 18)

Based on this RFC finding, the ALJ found, at step four, that Plaintiff could not perform any of her past relevant work. (R. 23). At step five, however, the ALJ determined that Plaintiff could work as a "small products assembler II," "officer helper," or "mail clerk." (R. 24). Therefore, the ALJ determined that Plaintiff was "not disabled" within the meaning of the Social Security Act.

## ANALYSIS OF PLAINTIFF'S CLAIMS

Plaintiff raises two related claims for relief which will be considered together. First, Plaintiff argues that the ALJ erred in failing to assign weight to the findings of Dr. Nannette Crowley, M.D., a rheumatologist who indicated that Plaintiff's "[e]xam and history [were] consistent with fibromyalgia." (R. 688; Pl.'s Br., Doc. 14, pp. 12-14; Reply, Doc. 17, pp. 2-3). Second, Plaintiff argues that the ALJ erred in discounting a "Physical Capacities Evaluation" form completed by Dr. Appavuchetty Soundappan, M.D., Plaintiff's treating physician, in December 2011. (Pl.'s Br., Doc. 14, pp. 14-15; Reply, Doc. 17, pp. 4-5). As discussed below, relevant case law supports both of Plaintiff's claims, and in addition, the ALJ may have erred in discounting Plaintiff's own subjective allegations of pain. Accordingly, it is recommended that the Court remand Plaintiff's case to the Commissioner.

Both of Plaintiff's claims relate to a diagnosis of fibromyalgia.[1] The Eleventh Circuit has repeatedly noted that fibromyalgia is "generally diagnosed mostly on an individual's described symptoms," and that "the 'hallmark' of fibromyalgia is therefore 'a lack of objective evidence." *Somogy v. Comm'r of Soc. Sec.*, 366 Fed. App'x 56, 63 (11th Cir. 2010) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)). For the same reason, the Eleventh Circuit has

---

[1] *See, e.g.*, *Davis v. Astrue*, 287 Fed App'x 748, 762 (11th Cir. 2008) ("[F]ibromyalgia [is] a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue. Common symptoms include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease") (citing *Benecke v. Barnhart*, 379 F.3d 587, 589-90 (9th Cir. 2004)) (internal punctuation omitted).

also noted that "a treating physician's testimony can be particularly valuable in fibromyalgia cases." *Moore*, 405 F.3d at 1212. Other Courts have emphasized the important role of specialists in diagnosing fibromyalgia. *See, e.g.*, *Presley v. Astrue*, 2009 WL 1543457 at *16 (N.D. Fla. June 1, 2009) ("Fibromyalgia is a rheumatic disease and the relevant specialist is a rheumatologist") (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

In this case, record shows that Dr. Soundappan, a treating physician, referred Plaintiff to Dr. Crowley, a rheumatologist, "for rheumatoid arthritis." (R. 687). Dr. Crowley first examined Plaintiff on October 25, 2010, (R. 687-88), and then performed follow up examinations on January 5, 2011, (R. 705-06), April 14, 2011, (R. 729-30), June 15, 2011, (R. 727-728), and September 19, 2011, (R. 725-26). *See* 20 C.F.R. § 404.1527(c)(2)(i) (length of treatment relationship). All of Dr. Crowley's records indicate a diagnosis of fibromyalgia. Additionally, Dr. Crowley found that of the 18 tender points to be examined in relation to fibromyalgia, Plaintiff tested positive for tenderness, at various times, at 14 to 18 of those points. *See* S.S.R. 12-2p, "Titles II and XVI: Evaluation of Fibromyalgia," 2012 WL 3104869 at *3.

Although Dr. Soundappan did not cite or expressly note his receipt of Dr. Crowley's records in either his treatment notes or in his December 2011 evaluation,[2] Dr. Crowley's diagnosis clearly supports Dr. Soundappan's findings that Plaintiff had pain all over her body, especially in her hips, knees and back (R. 750); could only sit for two hours and could stand/walk for less than one hour total during an eight-hour workday (R. 748); needed to alternate between sitting and standing throughout the day (*id.*); and could not work full time,

---

[2] It is not reasonable to conclude, as the Commissioner argues, that Dr. Soundappan did not have access to Dr. Crowley's records. (Resp., Doc. 15, pp. 7-8). As indicated above, Dr. Soundappan was the referring physician, and in addition, Dr. Crowley's records all indicate that she faxed her findings to Dr. Soundappan. (*See, e.g.*, R. 688) ("Records faxed to doctor only").

even in a sedentary position (R. 749). Dr. Crowley's diagnosis also supports Plaintiff's own subjective testimony.

In discounting both Dr. Soundappan's evaluation and Plaintiff's own subjective testimony, though, the ALJ did not refer to Dr. Crowley's diagnosis of fibromyalgia, to which the ALJ also failed to assign any weight. Rather, in assigning "little weight" to Dr. Soundappan's December 2011 evaluation, the ALJ noted that Dr. Soundappan's own treatment records did not support such severe limitations; that Dr. Soundappan failed to identify specific impairments,[3] tests, or findings supporting the degree of limitation suggested; that Dr. Soundappan "fail[ed] to address the effects of the claimant's [non-compliance] with recommendations that she diet and exercise;" and finally that there was "little in the way of objective clinical findings" supporting Dr. Soundappan's evaluation. (R. 20). In discounting Plaintiff's testimony, the ALJ similarly noted that the "objective medical findings do not show findings of such severity as to preclude the claimant from all work." (R. 22). The ALJ again noted that Plaintiff was "not compliant with her exercise or diet," and the ALJ also noted that Plaintiff's activities of daily living were inconsistent with the alleged severity of her impairments. (*Id.*).

At a minimum, the ALJ erred in failing to evaluate Dr. Soundappan's opinion in light of Dr. Crowley's findings, and particularly in light of her consistent diagnosis of fibromyalgia. The opinions of treating physicians, like Dr. Soundappan, are ordinarily entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v.* Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Here, while the ALJ articulated "good cause," the record does not support the ALJ's rationale. Contrary to the ALJ's opinion, Dr. Crowley's objective findings do appear to support Dr. Soundappan's degree of limitations. Additionally, it is not clear that Dr.

[3] Dr. Soundappan did indicate specific impairments causing Plaintiff disabling fatigue, but Dr. Soundappan's findings are largely illegible. (R. 749).

Soundappan—who referred Plaintiff to Dr. Crowley for rheumatological assessment—would be expected to have focused on Plaintiff's fibromyalgia-related symptoms in his treatment notes. In other words, it was error for the ALJ both to discount Dr. Soundappan's opinion for lack of rheumatological treatment notes and also to fail to assign weight to Dr. Crowley's rheumatological findings.

The ALJ may also have erred in discounting Plaintiff's own subjective pain testimony. In discounting Plaintiff's credibility, the ALJ observed that Plaintiff's daily activities would support a finding that Plaintiff was "not disabled." For example, the ALJ noted that Plaintiff frequently went out to lunch, and that she was able to run errands, shop, get on the computer, and perform household chores such as laundry and dusting. (R. 22). Plaintiff's testimony from both of her administrative hearings, though, indicates that she:

- Suffered pain when wearing constrictive items of clothing like shoes and bras, (R. 42);
- Had difficulty operating a computer for longer than 30 minutes due to pain, (R. 42-43);
- Needed assistance when showering, (R. 51);
- Needed assistance with her laundry, (R. 90); and
- Was unable to cook for herself, (R. 90-91).

Other portions of Plaintiff's administrative-hearing testimony are of unclear probative value. For example, Plaintiff initially claimed at her May 2011 hearing that she was unable to *walk or stand* for more than ten minutes at a time, but that she could *sit* for "an hour and a half to two hours." (R. 22). At her April 2012 hearing, though, Plaintiff claimed that she could *sit* for only ten minutes. (R. 75-76). The ALJ discounted Plaintiff's credibility, in part, by noting that Plaintiff's ten-minute sitting limitation appeared inconsistent with her daily lunch outings. (R. 22). There was no discussion at either the 2012 hearing or in the ALJ's opinion, however,

concerning the discrepancy between Plaintiff's subjective limitations as alleged at her two hearings.

Of course, credibility determinations "are the province of the ALJ." *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). Here, though, the ALJ supported her determination by referencing portions of the record that do not clearly support the ALJ's ultimate finding of "not disabled." *Cf. Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (noting that the ALJ "provided a detailed factual basis for his credibility determination, which did not turn on the lack of objective evidence documenting fibromyalgia"). Accordingly, on remand, the Commissioner should: (1) properly assess and assign weight to Dr. Crowley's findings; (2) reassess Dr. Soundappan's December 2011 evaluation; and (3) reassess Plaintiff's credibility.

## CONCLUSION

After careful consideration of the record, it is **RECOMMENDED** that Plaintiff's case be **REMANDED** to the Commissioner for further proceedings pursuant to "sentence four" of 42 U.S.C. § 405(g). In accordance with 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this 11th day of July, 2014.

<div style="text-align: right;">
s/ Charles H. Weigle_____  
Charles H. Weigle  
United States Magistrate Judge
</div>